**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**DANIEL GEORGE CORRING**                                                      **PLAINTIFF**

**VERSUS**                                                      **CIVIL ACTION NO.  1:11cv262-RHW**

**PEARL RIVER COUNTY and**
**RITA LUMPKIN**                                                      **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Before the Court are [109] and [115] the respective motions to dismiss or for summary

judgment filed by Rita Lumpkin and Pearl River County in this *pro se* prisoner lawsuit filed by

Daniel George Corring July 11, 2011, pursuant to 42 U.S.C. §1983.  Corring filed responses to

the motions [119] and [120],[1] Defendants filed their respective replies [123] and 125], and the

matter is ripe for ruling.  All parties have consented to the exercise of jurisdiction by the United

States Magistrate pursuant to 28 U.S.C. § 636(c) and FED.R.CIV.P. 73, and the case has been

reassigned to the undersigned for all further proceedings. [82], [83]

### Facts and Procedural History

Daniel Corring was arrested April 18, 2008 by Waveland Police Department for armed

robbery and two counts of kidnaping in Hancock County.  After the Hancock County Jail was

destroyed by Hurricane Katrina in 2005, Hancock County arranged for other nearby counties to

house its pre-trial detainees, and Corring was taken initially to Pearl River County Jail, where he

remained until he was transferred to Marion County Jail on November 3, 2010.  He was

---

[1]The Court notes that on February 1, 2013, Corring filed [129] a document styled "motion to compel," which is, in fact a reiteration of arguments he previously presented in response to the present motions.  Since the Court has addressed in this memorandum Corring's repetitive arguments, the Court will deny [129] the motion to compel.

ultimately convicted of the armed robbery and kidnaping charges in Hancock County and sentenced to serve a total of thirty years for the convictions. The Mississippi Department of Corrections shows he is presently housed at the South Mississippi Correctional Institution at Leakesville, Mississippi, and that his tentative release date is April 11, 2038. Corring alleges the Defendants violated his constitutional rights during his incarceration in the Pearl River County Jail from the date of his arrest until some time in 2009. In particular, Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs.

Some time before Corring committed the crimes for which he is incarcerated, he shot himself in his right leg. Although no specific date for the injury is given, Corring testified it happened some three months or more before he was arrested.[2] He testified he went to the hospital in Bay St. Louis and also saw a private surgeon for the injury when it occurred; that they washed it off, x-rayed it and told him the bullet went through his leg but there was clothing in the wound. According to Corring, these otherwise unidentified medical personnel told him the clothing should work its way out, and that if it had not healed in three months, he should return and have the clothing removed. Corring sought no other treatment for the injury before committing the armed robbery and kidnaping and being put in jail. [122-2, pp. 18-24, 32-33], [115-1, p. 18]

For several months following his incarceration, Corring made no complaint about his leg, although he did make numerous requests for medical attention for various other complaints including headaches (May 3, 2008); warts or pimples on his penis (May 29, 2008); arm pain (June 13, 2008 and August 3, 2008); requests for testing for HIV and AIDS, concerns that he may have cancer, requests for an abdominal x-ray as he thought he may have tapeworms or

---

[2]Corring has never provided the specific date as to when he shot himself in the leg, nor has he identified the "private surgeon" he states he saw.

heartworms, and complaints of difficult bowel movements (July 8, 2008);[3] requests that he be taken off the no-pork diet[4] (July 14, 2008, July 19, 2008, July 21, 2008); strange marks on body, needs to talk to someone, needs some garlic, thinks fellow inmates are doing voodoo on him (July 30, 2008); "evil voodoo s**t" trying to kill him (August 5, 2008); and problems with his testicles (August 27, 2008, September 4, 2008, and September 9, 2008). [122, pp. 127, 124-5, 113]. All those complaints were promptly addressed by the medical department. [122, pp. 107-111, 113-120, 127] Corring concedes that when he submitted a sick call request to see a nurse, he got to see a nurse. [122-2, p. 197]

Corring admittedly submitted only two medical request slips regarding his leg. [122-2, p. 199] Although his medical intake assessment noted the pre-existing gunshot wound, Corring did not complain about the leg until some five months after arriving at Pearl River County Jail. On September 14, 2008, he submitted a medical request stating he needed to see the doctor about a hole on his leg, that the bullet wound had "re-opened." Nursing staff responded to this medical request the next day, noted an approximately .5cm round area, questioned possible staph although the area was not reddened, and established a course of action including wound care and monitoring for infection. [122, p. 112] Corring's next complaint about the leg was an undated medical request complaining his leg was swollen, that there was "clothing inside leg lodged next to artery worried about a blood infection." The October 20, 2008 response, notes the complaints of leg pain, records findings of no discharge and increased tenderness, and orders antibiotic ointment twice daily with instructions to Corring to keep his hands off the wound. [122, p. 123]

_____

[3]With respect to his bowel problems, Corring admits he told Pearl River County medical personnel he thought "an alien crawled in [his] a**," that he had "aliens in his rectum, and vampires biting him." [122-2, pp. 89-90]

[4]At his intake interview, Corring told jail officials he was allergic to pork, but later denied any allergy.

The final entry in Corring's records which mentions the leg was on December 29, 2008. On that date Corring was found shaking, unable to state his name or follow commands, and appearing not to comprehend, for which jail staff sent him to the hospital emergency room for evaluation of his confused state. [122, pp. 121-122] Corring arrived at Highland Community Hospital at 11:03 a.m. with a chief complaint of "altered mental status,"[5] and was admitted at 2:54 p.m. with a diagnosis of hyponatremia (low sodium). Additional admitting diagnoses were: hypokalemia (low potassium), water intoxication,[6] confusion, and an "incidental finding" of abscess to the right thigh. [122-1, pp. 7-8, 18], [115-1, p. 22] As he was questioned about his medical history, Corring showed the doctor a wound on his right thigh about one-half inch round and scabbed. When Corring picked the scab off and pinched the area, drainage came out. The area was cleaned and a dressing applied. [122-1, p. 69] The admitting physician's plan of care included starting Corring on saline, replacing potassium by mouth and IV supplement, starting him on antibiotics, and having a surgery consultation for excision of the abscess cavity on his thigh. [122-1, p. 22] The procedure was performed December 30, 2008 without incident [122-1, p. 31], and Corring was discharged from the hospital the same day, with a prescription for a week-long course of Bactrim, instructions that the dressing on the leg be changed daily, and instructions that Corring limit his water intake. [122-1, pp. 24, 53] Although Corring testified in the omnibus hearing that he thought he had gangrene, there is nothing in his prison or medical records to so indicate, and he has produced no medical evidence to substantiate the claim. Gram stain culture from the right thigh abscess area revealed no organisms. [122-1, p. 178] Corring's records contain no further complaint about his leg.

---

[5]Corring mentioned "vampires drinking his blood." [122-1, p. 16]

[6]Corring reported he had been drinking 10-20 twenty-ounce glasses of water daily. [122-1, p. 20] He was advised to limit his water intake to 2 liters every 24 hours. 122-1, p. 18]

Although Corring also complains he was not timely treated for psychological problems or difficult or painful bowel movements after he was put in jail. However, he admits he was neither under psychiatric care nor on psychiatric medications when he was arrested; he testified he had received no treatment for psychological problems since he was a child, and that he discontinued that treatment because it was his choice. [122-2, pp. 44, 106-109] Corring's records show he was counseled by nurses, and that his psychological issues at Pearl River County were addressed with prescribed medications and counseling by therapist Trent Davis. His records further reflect that his complaints of difficult or painful bowel movements were treated with fiber powder and metamucil. His records show he sometimes received these substances on a daily basis. [122, pp. 66-68, 70, 117, 128, 185]

Summary Judgment Standard

Under Rule 56, FED.R.CIV.P., a motion for summary judgment shall be granted "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." A material fact is one that might affect the outcome of the suit under the governing law; a genuine dispute exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, the Court views the evidence and draws reasonable inferences most favorable to the non-moving party. *Abarca v. Metropolitan Transit Authority*, 404 F.3d 938, 940 (5th Cir. 2005).

The party who bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). One seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, and any affidavits, which he believes demonstrate the absence of a genuine issue of material fact. *Id.*, at 325. If the movant fails to show the absence of a genuine issue

concerning any material fact, summary judgment must be denied, even if the non-movant has not

responded to the motion. *John v. State of Louisiana*, 757 F.2d 698, 708 (5th Cir. 1985). If the

movant carries his burden, the burden shifts to the non-movant to show that summary judgment

should not be granted. *Celotex*, 477 U.S. at 324-325. The non-movant may not rest upon mere

allegations or denials, but must set forth specific facts showing there is a genuine issue for trial.

<u>Nurse Reta Lumpkin's Motion [110]</u>

Reta Lumpkin was a nurse practitioner who provided medical care at the Pearl River

County Jail while Corring was incarcerated there. Corring's complaint against her appears to

allege not only deliberate indifference to his medical needs, but also medical negligence.

Lumpkin asserts Corring is statutorily barred from pursuing the negligence claim because he

provided no pre-suit notice of any medical negligence claim as required by Miss. Code Ann.

§ 15-1-36(15),[7] he has no expert medical witness to support such a claim,[8] and he failed to file

the claim within the statute of limitations set out in Miss. Code Ann. § 15-1-36(2).[9] Corring

admitted in his deposition that he gave no pre-suit notice to Lumpkin [109-3, p. 13], and that he

has no expert witness to support his negligence claims. [109-3, p. 16] The Court finds these

admissions sufficient to warrant entry of judgment as a matter of law on the medical negligence

claims, therefore the limitations issue need not be discussed.

---

[7]"No action based upon the health care provider's professional negligence may be begun unless the defendant has been given at least sixty (60) days' prior written notice of the intention to begin the action. No particular form of notice is required, but it shall notify the defendant of the legal basis of the claim and the type of loss sustained, including with specificity the nature of the injuries suffered...."

[8]Expert medical testimony is generally required to establish a medical negligence claim in Mississippi. *See Palmer v. Anderson Infirmary Benev. Ass'n*, 656 So. 2d 790, 795 (Miss. 1995); *Neely v. North Mississippi Medical Center, Inc.*, 996 So.2d 726, 729 (Miss. 2008).

[9]"... no claim in tort may be brought against a licensed ... nurse ... for injuries arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered..."

Lumpkin also contends Corring cannot prove she was deliberately indifferent to his serious medical needs. Pre-trial detainees are protected by the Fourteenth Amendment from imposition of conditions of confinement that constitute punishment. *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996). In deciding the constitutionality of conditions of confinement of pretrial detainees, the Court must determine whether the conditions complained of are "imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). To establish a constitutional violation for inadequate medical care, Corring bore the burden of proving: (1) Defendants were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) that the Defendants actually drew that inference; and (3) that the Defendants' response indicated that they intended that the harm occur. *Thompson v. Upshur County TX, et al.*, 245 F.3d 447, 458-59 (5th Cir. 2001); *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (plaintiff must show officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs."). In other words, Corring had to show the Defendants knew of and disregarded an excessive risk to his serious medical needs, and that their deliberate indifference unnecessarily and wantonly inflicted harm on him.

Deliberate indifference cannot be inferred from negligent, or even grossly negligent, acts or omissions of a defendant; mere negligence or neglect, unsuccessful medical treatment or even medical malpractice do not give rise to a § 1983 cause of action. *See, Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Estelle v. Gamble*, 429 U.S. 97, 105-6 (1976); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979). As the Court stated in *Smith v. Cooper*, 2011 WL 3115850, *4 (W.D. La. 2011):

Neither an incorrect diagnosis nor the failure to alleviate a significant risk that an official should have perceived but did not will be sufficient to establish deliberate indifference. *See Domino v. Tex. Dep't of Criminal Justice*, 239 F.2d 752, 756 (5th Cir. 2001).

Corring admittedly received medical treatment when he requested it at the jail, and was taken to the hospital on several occasions, sometimes unnecessarily he claims. [109-3, pp. 83, 85, 95]. That he disagreed with the treatment provided, or might have preferred different treatment, does not render the treatment he received constitutionally inadequate. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). A finding of deliberate indifference "must rest on the facts clearly evincing 'wanton' actions on the part of the defendants." *Johnson v. Treen,* 759 F.2d at 1238. Corring has not shown that Lumpkin or Pearl River County jail personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs." *See Domino*, 239 F.3d at 756. The evidence before this Court fails to establish deliberate indifference to Corring's medical needs, and warrants summary judgment on the claim of deliberate indifference.

Pearl River County's Motion [115]

To establish a claim of liability against Pearl River County, Corring was obligated to come forward with evidence that the constitutional violation he asserts in this lawsuit, deliberate indifference to serious medical needs, resulted from some official policy, custom or practice of Pearl River County, and that the policy, custom or practice was the "moving force" behind his alleged injury. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't. of Social Services*, 436 U.S. 658, 694 (1978)). The burden of establishing such a claim is a heavy one.

> [A] local government may not be sued under § 1983 for an injury inflicted solely
> by its employees or agents. Instead, it is when execution of a government's policy
> or custom, whether made by its lawmakers or by those whose edicts or acts may
> fairly be said to represent official policy, inflicts the injury that the government as
> an entity is responsible under § 1983.

*Monell,* 436 U.S. at 694. Corring was required not merely to identify conduct attributable to the

County, but also to demonstrate that (1) through its deliberate conduct, the County was the

"moving force" behind his alleged injury, [2] the County action was taken with the requisite

degree of culpability, and [3] there is a direct causal link between the County action and the

deprivation of his constitutional rights. *Board of County Com'rs of Bryan County, Okl. v.*

*Brown*, 520 U.S. 397, 403-404 (1997).

Pearl River County states its policy regarding medical care was to allow contracted

medical staff to make decisions in response to requests for treatment, and if an emergency arose,

to call an ambulance. The County assert Corring has no evidence that the County had any policy

or custom of denying medical treatment to inmates in the County Jail. As previously discussed,

Corring's records, and his own testimony establish that when he requested medical attention, he

received medical attention, both from medical personnel at the jail and from outside health care

providers and hospitals. Furthermore, as the Court found above, Corring has failed to present

evidence to establish the constitutional violation he alleges, *i.e.*, deliberate indifference to his

serious medical needs. That, combined with his failure to present evidence to establish the

essential elements of a municipal liability claim, entitles the County to summary judgment. The

Defendants' motions for summary judgment will therefore be granted and a separate will

judgment entered in favor of both Defendants.

SO ORDERED this the 4th day of February, 2013.

/s/ *Robert H. Walker*

ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE